Good morning. I'm Robert Goldberg, Clark Goldberg and Madruga, and I represent the appellant in this matter. I'd like to reserve a couple of minutes at the end. The question is posed, what authority did the City of Compton have to destroy Mr. McCullough's property? It wasn't in the sentencing order. The sentencing order of the City of Compton acknowledges didn't even address the disposition of the property. It just identified the property to be removed. It's important to understand that the criminal proceeding that was initiated against my client was to punish him for violating two municipal ordinances. And the punishments were to put him in jail or to fine him. Now, my client entered into a sentencing order, which was a negotiated compromise of this problem. And it was drafted by the assistant city attorney. I thought Mr. McCullough was represented by the public defender. He was, but the sentencing order was drafted by the assistant city attorney. No changes made to it. There were some interlineations, some of a substantive nature, but under the law, when it comes to a sentencing order, a plea bargain, any ambiguity to be construed against. Whatever is contained in here, it is what it is, so to speak. Yes. So you allege that they came onto the property under this order. They took his stuff. They destroyed it. And destroyed it. Okay. What's the constitutional violation? The destruction of private property by the city is a seizure. Whether or not it's an illegal seizure depends upon the reasonableness. So there's a fourth, so you're alleging a Fourth Amendment violation. Correct. All right. Is there also a taking? Well, yes, Your Honor. We're arguing there's a taking as well. The seizure and the destruction of Mr. McCullough's property is a violation. Now, it seems to me that they had under this, whatever you take of this document, at a minimum, it did give him the city access to his property to take it. Specifically, what was given to him. Your argument is, is it didn't give them the authority to destroy it. So in that sense, they acted arbitrarily? There's two points. Clearly, they did not have any authority to destroy it. But first, specifically, they were given the authority to go onto his property and to remove the commercial equipment, which is defined as trucks, trailers, and tractors. And to remove trash. There's nothing in there to indicate that they were authorized to remove all of his personal property. So let me make sure I understand your argument. The order specifically refers to commercial equipment. It isn't quite defined as. It's commercial equipment including trailers, trucks, tractors, RVs. Trash including wood, metal, weeds, tree limbs. But you're saying that his construction materials falls in, that falls in neither category. That's correct. You're saying that this order simply doesn't allow them even to remove it, let alone destroy it. Does not allow them to remove the construction materials. $300,000 is quite a lot of construction materials. Yes, Your Honor. Let me make sure I understand the argument. Your first argument is not allowed even to remove what you call the construction materials. That's true because that was. The second argument is even if we were to read this to allow them to remove it as either commercial equipment or maybe trash, it doesn't allow them to destroy it. That's your second argument. Correct. And in fact, Your Honors, they did remove 30 tractors, trailers, and trucks. They inventoried it. They provided my client with an inventory list, which you'll find at 258. And they stored the trucks and later it was sold. And therefore, in this case, we're not claiming a loss of the tractors, trailers, and trucks. But they arbitrarily seized the $300,000 of construction materials, removed it, and destroyed them. When the city itself acknowledges there was a place to store them, they never inventoried the property, they never allowed my client a chance to reclaim it. If they weren't permitted to remove the construction material, your client would then go to jail for six months. No, Your Honor, because that was part of the deal. No, that's not part of the deal. Part of the deal was to clean up the violation of the city ordinance. And the ordinance would be still violated just if this, what you call construction material, was there. It was not in a shed. It was open. Your Honor. That was the violation. Yes. And the violation would have continued. Just like the certificate of occupancy, which was another count, that continued as well. This was a negotiated settlement. Your Honor, the point is... But it's a continuing violation. And you want them to continue the violation so that they can continue to give them new complaints and new arrests and more time in the slammer. What the, it's an 80-year-old gentleman, Your Honor, and what the assistant attorney said... I didn't have all the years. I put people who were older than that in jail. What the assistant attorney said, city attorney said was, we want you to remove your tractors, trailers, and trucks and your trash. That was what communicated to him. That's what the document said. If the assistant city attorney wanted to cover everything, she could have said, we're going to remove everything that's stored outdoors. So he's relying upon what he's seen. So all we're saying is a matter of summary judgment. Just out of curiosity, what was this construction material? There were... It could be trash. Well, that actually is an issue of fact. But Mr. Mercola has stated, and there's been testimony, there were aluminum lighting. There were decorative bricks. Again, was this new stuff or was it used stuff? Some of it was purchased in pallets. I don't know if it was used or new, but I can tell you that it was purchased from some kind of supplier on pallets. There was copper wiring, big spools of it. And there's a whole list in our papers of the $300,000 worth of equipment. But if it's trash, it's an issue of fact. Mr. Mercola didn't treat it as trash. Trash including but not limited to wood, metal, weeds, tree limbs from the said property. It's a good point. The testimony of the city supervisor said he was told to treat everything as trash. It didn't matter if it was valuable or not. In fact, Mr. Houston, the code enforcement officer, said even if it was valuable, we would have gotten rid of it. That was their policy, to get rid of everything, trash it. But I'm still having concerns. My primary concern is what is the Constitution? This is a 1983 action. Right. And that's what the case is all about. It's a violation of his constitutional rights. And I know there's some state law claims that were alleged here as well. And the district court judge said under this order, under the Fourth Amendment, consent is okay. So the district court judge said it was consent. Right. Even though the sentencing order didn't even address the disposition of property. That's a huge ambiguity. You have a problem. I think the district court judge is correct to some extent. You do have a problem with consent because it clearly allowed him on the property. Yes. All right. So you have to go beyond that. Yes. And you answered Judge Fletcher. And the heart of your dispute is that they destroyed this material, which wasn't authorized by this agreement. So then the question is what's the constitutional violation? Can you show a constitutional violation? I gather Judge Fletcher brought out you could allege a taking. They took your property and they destroyed it. But I gather in order to have a substantive due process claim like that, you need to show that they acted arbitrarily and whatnot. Sure. But also the Fourth Amendment is an illegal seizure. If you destroy, and that's in the Saldal case, that's in the Goldblatt case, that's in the Huck case, if you damage personal property, you destroy it. It was unreasonable to take it and to destroy it. Exactly. I guess that's what the claim is. Even if he had authority to take it and remove it from the property, they could have $300,000 in material. They could have stored it. They could have given him a chance to reclaim it. It's kind of like an excessive force case. You know, you can arrest somebody and have the authority to arrest them, but you can't use excessive force to carry out the arrest. Exactly. Is that what your argument is? They used excessive force against him. Right. So it was unreasonable to destroy it. For example, if you had a $500,000 Porsche and all you had to do was tow it and park it and then you could give notice to reclaim it or you could sell it, but rather just smash it with a smithereen, it's completely unreasonable. But when you have the ability to preserve it, to sell it, or to at least give, we say the authorities in our papers. Mr. McCullough had the authority and the right to go in there for a number of times. The city gave him all the time in the world to clean this up. He didn't do it. Mr. McCullough, and we present facts. The question for summary judgment in part is, is the sentencing order susceptible to Mr. McCullough's interpretation? And he's provided facts where he believed his only responsibility was to remove the trucks, the trailers, and the trash, because that is what he was told he had to do, and that's the testimony, what he was told. And that's, in fact, what the document says. Now, Mr. McCullough tried to go ahead. Well, it certainly isn't unambiguous to the extent that it doesn't say what the city wants it to say. The city wants it to say, Mr. McCullough, you have to remove everything or we'll remove it. Everything's stored outside. In fact, if you look at paragraph four, it says you will pay Mr. McCullough the items listed above for their removal. Why list at all the trailers, trucks, and trash? That's because that's what he was told. That was the subject of the negotiation. And Mr. McCullough did try to find a place to store his trucks. He never imagined he had to find a place to remove his supplies because he didn't think that was an issue with the city. You're about a minute and a half over time. I'm sorry. It's not your fault. We've been asking you questions. Let's hear from the other side, and then we'll give you a chance to respond. Thank you. Good morning, Your Honors. Deputy City Attorney Anita Aviles on behalf of Apelli, the city of Compton. First, I'd like to respond to some of the points that counsel made. He talks about how this case really hinges on the unreasonableness of the city's actions, yet he asks the court to interpret the sentencing order in a way that shows that it's ambiguous, thus, inferences, that it's susceptible to two reasonable interpretations. So I don't understand how you can have a Fourth Amendment. Can I ask you a question that's just going to set up my legal understanding? I'm not asking you to agree with this preposterous hypothetical I'm giving you. Let's say that you are the city, and I give to you, the city, the permission to come onto my property to water my lawn. You come onto my property with my permission, and then you burn down my house on purpose. Do I have a claim against you for taking because of burning down my house? Yes, and in fact, they do have a takings claim. Okay, and that's a valid claim on the facts that I've just given you? Yes. Okay, so a takings claim here is permissible if the city has done something for which it had no authorization. That's correct. The question is, are they authorized to do what they did? That's correct. But on the takings claim, I also want to point out that under Williamson and Cassetri, they did not file an inverse condemnation with the State, and they failed to exhaust their State remedy, and therefore, they don't have a proper takings claim. Well, Williamson County won't do that for you. Is there something else that it requires? Is there some sort of administrative procedure they need to follow just to get an inverse condemnation claim against you? Well. Williamson County is a zoning case, and that's not applicable. Well, I believe it is. It says that you're supposed to file with the State in order to, you know, inverse condemnation case, and under the City of Baldwin Park redevelopment, it's also personal property and real property. So I do believe that inverse condemnation should have been filed first for the property that they allege was taken. So they could have gone and tried to get damages from through the State courts. Correct. And they did not do that. They went straight to Federal court. So we don't believe they have a valid Fifth Amendment takings case. Do they have a due process claim? No, they don't. And the reason for that is, well, the due process claim that they allege focuses on a draft policy that was discussed by the code enforcement officer at his deposition, and that has to do with the administrative nuisance abatement process that the City has in its code. That's not what was controlling the City's actions here. What was controlling was the consent. I mean, the consent of the sentence. I guess what I'm after here is the procedural aspects. Assuming we're back in the situation where I gave the City permission to come onto the property, to water the lawn that burns down the house, I file no lawsuit in the State court. I simply come straight to Federal court. You're saying I have no Federal cause of action because I had to go to the State court first for taking. Correct. Do I have any Federal cause of action at this point, or am I totally barred for failure to go to State court on a Fourth Amendment claim, for example? That's correct. And what's your authority that I had no Fourth Amendment claim? Well, part of that is they never identified, and they didn't do this at the district court, and they're not doing it here, the constitutional right that's being violated by the destruction, or in this case, what they allege was the City's. Well, he just told me that it was an unreasonable, unreasonable. And again, what he's saying that on the one side.  It was an unreasonable taking in that sense. Right. But you still have, under 1983, as you know, you still have to identify what that constitutional violation is. Oh, Fourth Amendment. And so he's saying that they exceeded the scope of the consent. And to get there, he's arguing that his interpretation of the sentencing order, which he has to say is ambiguous and thus susceptible to reasonable interpretations. And then you have the City acting under this, what they believe was a reasonable interpretation of that order. And so that undercuts the Fourth Amendment argument. Let's assume that we can get past all these procedural things. And the real question is, there is a cause of action against you if you did something you had no right to do. Correct. Where do you find in this third paragraph the right to destroy the construction materials? Well, I think it's implicit in that, in that you look at the overall scope of what was happening. You look at the preceding paragraphs that deal with the abatement of the violations and the violations are identified. And Judge Duffy had it correct, that it talks about the outside storage of materials and that's prohibitive. Where are you? Who are you reading from? It is the sentencing order, which is ER255. Yeah. And it identifies the code sections. Yeah. And the first code section, 30-12.4G, is the outside storage of material. Right. Right. And before the district court, we, of course, included the sections of the municipal code that spell out exactly what that involves. And you cannot have materials stored outside the building. I understand that. So I think that's a fairly good argument that would reject what I'm calling his first argument. His first argument is you had no right to remove anything other than vehicles and trash. He says you don't have a right to remove construction materials. You're saying, look at this in context. We pretty clearly have the right to remove. Okay, I'm with you on that point. Where do you find the right, once you've removed material of value, simply to destroy the material? Well, the material of value is subjective. The city looked at this material and they saw it as trash that fell within that section of the order of the trash. It's not copper, metal. We know that copper wire is valuable. We know that, in fact, value of perfectly functioning copper wire is stolen simply for its value on resale markets. So we know the copper wire must have had some value. I have no idea what it is. But I'm taking it as a given that some of the material that was destroyed had a fair market value. And it may have. But at this point in the process, when you look at the initiation of the misdemeanor prosecution and the months between the time it was first initiated and January 19th when the sentencing order was passed, Mr. McCullough was given extension after extension of his hold to clean up all this property. I'm very sympathetic to the city on this point. Mr. McCullough, I mean, every city has this situation of people who somehow the world kind of gets too much for them. They've got grand plans. They store stuff. It stays there. They get older. The senior center he was going to build didn't happen. And the city's at its wit's end. What are we going to do here? And it goes in here and negotiates what it thinks is a pretty good solution. But that all to one side, I'm trying to figure out, okay, what is it exactly that the city negotiated and wrote down? I'm having trouble finding where the city gets to destroy things of value. Well, the city warned him, told him, and his daughter testified at her deposition that the city, the city attorney who drafted the agreement and worked with him through all these months, told him everything had to be removed. That means they were going to take everything and throw it away. Removal means to the dump. It's nuisance abatement. You remove everything and you throw it away. If Mr. McCullough had thought there was something valuable, he was given ample time to remove it. And he did not. So at that point, the city goes in and says, this is a nuisance that we need to abate. He's given us consent to do it. We're going to just go in and take everything to the trash. And, in fact, things were taken directly to the dump. And other things were taken to a city facility and then taken to the dump because we have trash hauling limits. And so we couldn't take everything directly there. The vehicles, as the record shows, were taken by Fontenot Towing and taken to their yard. And whatever happened after that didn't involve the city. You know, I have a sneaking suspicion that the fair market value of the construction materials that were destroyed was not $300,000. I have that feeling as well. Do we have any fix beyond? I mean, I've read the papers. So, I mean, yes, there were some decorative bricks. There was some copper wire. Yes, there was some aluminum lighting and so on. What are we talking about here in terms of fair market value of that property? Well, the testimony that we have from our crews that went and removed this, and this was in their deposition, is they saw it all as trash. They didn't see anything of any value. Well, they were instructed to treat it as trash. But they didn't see anything of any value. They saw it as trash, I guess, was his, you know, he saw value. Correct. I don't know what the value was. Okay. Fair enough. I mean, there's no reason why you should be able to give any more precise answer than you just gave. Let me ask you one last question on his constitutional claims. Why doesn't he have a constitutional, why can't he assert a substantive due process claim? Well, because he has a takings claim or would have had a takings claim. Of course, we argue that he doesn't. But when you have the more particularized section of the Constitution that provides that remedy, you're supposed to follow that under the Graham case and Albright. But he just said he doesn't have a, is it your position he doesn't have a Fourth Amendment claim? Yes. But he still doesn't have a due process claim. Correct. Substantive due, I'm talking about substantive due process. Right. Acting arbitrarily. Right. And, again, he points to what he characterizes as arbitrary and capricious policy. But that wasn't the cause of the harm. And for the 1983 cause of action, you need to have that action on that particular ordinance or whatever. This was a Menal claim. And then this came. Right. And under this scenario, we have a consent under the sentencing order that the city acted on that caused the harm, not a policy that's in the administrative code on nuisance abatement. I'm out of time. Thank you. Thank you very much. We'll give you a minute. You know, the city wants to have it both ways. They want to claim that the construction material was really commercial equipment. What about this argument that if you're making a takings claim, you were supposed to file some sort of inverse condemnation claim against the city? I don't think that that applies to these facts. That applies to, I believe that applies to zoning cases. The Williams County is different. But they're saying the inverse condemnation claim requires as a prerequisite that you file a claim against the city. That's a fairly common requirement. Why does that not apply here? Well, under the Schneider case, there was no state filing. And the facts of this case are comparable to that. So I believe that we're solidly under Ninth Circuit law. Now, whatever the value of Mr. McCullough's property, and he believes it's $300,000 and he's testified to that, that's an issue of factor. I'll submit. Any other questions from the panel? No. Thank both sides for your helpful argument. Case of McCullough v. City of Compton is now submitted for decision. The next case on the argument calendar this morning is Hyde v. Midlands for credit management. When you're ready, I seem to have gotten my papers tangled up here. You go right ahead.
judges: Fletcher, Paez, Duffy